My name is Matt Campbell. I'm representing Mr. Herman from the Federal Defenders of Eastern Washington and Idaho. I'm going to try to reserve three minutes for rebuttal. This was a warrantless search and seizure and is thus presumptively unlawful. The burden is on the government to demonstrate that a narrow exception to that presumption applies. In doing so, the government relies primarily on a single witness to carry this heavy burden. That witness told approximately three different versions of events surrounding this seizure and search. Is there any question that your client did weave and went across the center line that caused the stop? Your Honor, for purposes of this appeal, we're not contesting but that there was a traffic stop. However, there was a lengthy discussion at the evidentiary hearing in which the officer was cross-examined about the precise nature of the area where he was stopped. I do believe that is somewhat relevant because essentially the area in which he finally stops, the officer says, well, he couldn't legally stop there but there were lines on the road that seemed to indicate that he could. So in terms of assessing that for whether or not he was clearly DUI based solely on his driving, I would point the court to that portion of the cross-examination. But we're assuming for purposes of the appeal that there was reasonable suspicion to stop. For traffic violations, correct. We're not contesting that specific fact. What we are contesting is that each of these different factual versions was essentially designed to support a different legal theory. And as the law changed, the facts seemed to change, particularly in regard to the issuance of the Gantt opinion. Typically in a case, the facts determine the legal theories, and here we're saying that it was in essence the reverse. But under RAND, and this is one question I have from reading your brief, under the decision in RAND where we don't really care what the officer was thinking subjectively, we just look at the objective facts, I wasn't sure if it mattered so much what his theory was of why he was stopping or arresting your client. Why does that make a difference? Why aren't we just looking at what the facts were? Well, Your Honor, and we agree, RAND stands for what it stands for. But in this case, what we believe happened is that essentially the facts were changing. While we would agree that if a person lays out facts A, B, and C, and then comes to a legal theory, if that theory proves incorrect, but based on facts A, B, and C, a different theory applies. What was the key fact that you felt was changing as the testimony progressed? Certainly. There are a number of them, and I'll just try to go through them quickly. Initially, in his initial report, he says that the reason for the pat-down search was because he was scared of weapons. And there's a fair amount of testimony where he goes through and lists sort of a parade of horribles of other cases in which officers have been shot. So isn't that his subjective view of what his reason was for the pat-down? The fact would be he did the pat-down, and then he's giving different reasons for it? Your Honor, subjectively, arguably, yes. But when you read his report, his report does, for his initial report, makes no mention of a DUI arrest. He doesn't say that the defendant is under arrest for a DUI at the moment that he talks to him while the defendant is still seated in the car. All he talks about are weapons. Then he issues this supplemental report, which doesn't come out for over a week, supposedly because another officer tells him, can you clarify your reasons for arrest, in which the supplemental report says that based solely on his driving and on talking to him before he even runs his name on the CAB report, he is arrested for DUI. Those two facts, the two reports are largely in conflict. And then when he testifies, he then proceeds to say, for example, well, he was under arrest, but I was mainly concerned with weapons. Does that matter? I mean, don't we just have to consider whether there was probable cause to arrest him for whatever purpose? Does it matter what Mr. Walker testified to, what his thinking was? I think that what his thinking was is relevant in terms of assessing his overall credibility. If he is saying as a historical fact that at the moment that I was addressing Mr. Herman, my major concern was weapons, and then a moment later he says, at the moment I was addressing Mr. Herman, my major concern was DUI, that seems to strike a chord regarding his credibility. Both could be true, really. He arrested him for DUI, but he always is concerned about weapons. I mean. Agreeably, one could have more than one concern. But what's striking here is he issues these reports, one of which is in the form of a probable cause affidavit. They're issued under the penalty of perjury, and they tell two completely different stories. I don't think one could write a report under penalty of perjury saying the reason for the arrest was I later found meth, and then say, you know, a week or two later, say no, the reason I arrested him was DUI. To follow up on Judge Fletcher's question, though, I mean, he was weaving, though we're assuming for purposes of the appeal. He reports that he observed some behavior consistent with drug use, and when he asked him to get out of the car or asked him if he had weapons, then he just reaches around the car. So why can't we say, as an objective basis, there was enough evidence there that you could have a concern about both or suspect that there was both evidence of drug use and there was evidence or concern about weapons under those circumstances, which I don't see you as challenging those particular reports. Well, Your Honor, we're essentially challenging all the reports, and we're saying that when you look at the two different reports plus his testimony, we don't know what happened. We have no idea. And I believe that that is actually spelled out to some extent in addressing the issue of whether or not there's meth residue on the spoon that is ultimately found in his pocket. The officer says, oh, it was very clear. I could see it clear as day. There was meth all over the spoon. Well, the evidence photos show that there is no meth on the spoon. The district court said, well, I credit Mr. Walker, and there was evidence that the spoon had been scraped off to do field testing, and the lab report said, yeah, there was some evidence of meth on the spoon, though also consistent with cross-contamination. But we would have to say the district court's finding was clearly erroneous, you know, that it smelled like dead fish or whatever the standard is. How can we do that under this set of facts? Your Honor, I believe and I hope you received a 28-J letter I submitted citing to an Eighth Circuit case that just came out two weeks ago, I believe it's called Procapec, that deals with these similar issues. And essentially what it directed the courts of the Eighth Circuit to do was to look at internal inconsistencies, to look at the objective evidence that can be clearly sort of delineated. And that simply saying, the district court simply saying, I saw the officer, he testified, he looked believable to me, isn't enough when there are sufficient internal inconsistencies or discrepancies with the physical evidence. And we would argue that the physical evidence surrounding the spoon, the cross-contamination, et cetera, is much more credible than the officer stating, well, I could see it when their own evidence photos don't show it. And there were never any reasonable reasons given as to why that would be the case. I'm going to try to reserve. Okay.  Thank you. Good morning, Your Honors. May it please the Court, Tim Ohms on behalf of the government on this appeal. Would you start out by telling us how this case is different from Gant? Well, in this case, Your Honor, there was probable cause. Ultimately, the court determined that there was probable cause for the officer to conduct the search, and the court also determined that there was a reasonable basis to believe that the vehicle would contain evidence of the crime for which the defendant was arrested. And in addition, there's a strong indication here of inevitable discovery in this case, given that a drug dog was summoned once the spoon was found by Trooper Walker. So I think for all those reasons, this case was clearly distinguishable from Gant. In fact, the court, in its initial ruling prior to Gant, ruled that there was probable cause for the officer to conduct the search. So when Gant was decided, and that was the basis for the motion for reconsideration, it really didn't affect that initial ruling by the court, at least directly, although the court did allow the defense to go forward and did have a hearing on that motion and ultimately denied it. So are you saying that the rationale for searching the car is under the automobile exception, probable cause, or under this sort of Gant reasonable-to-believe evidence standard? The court ruled in the alternative that both of those applied. I think that the most straightforward analysis is just the probable cause analysis. But the probable cause analysis, it's very fact-specific. It depends upon the totality of the circumstances, and so you have to look at the facts. And those facts do come primarily through Trooper Walker. And so what's been placed at issue is Trooper Walker's credibility. And I agree with, I think, the point of the court's questioning, some of the questioning that I heard, in that one of the principal areas that the defense points at as an inconsistency are really Trooper Walker's subjective statements about what he believed his basis was for doing different actions, his subjective statements about the legal basis for his actions, essentially. And in his initial report, he said that he searched the vehicle for weapons. This was after finding the spoon, that he opened the door and immediately smelled a strong odor of methamphetamine, an overpowering odor of methamphetamine. In his supplemental report, he said significantly the same thing. There really isn't that much difference in terms of the reason why he said he searched the vehicle. He said that he does say in the supplemental report that he had already concluded that he was going to arrest this defendant for DUI, but that he was putting that DUI investigation on hold until he could resolve the question of whether or not the defendant had a weapon in his vehicle. And, of course, if the trooper were going to proceed with the DUI investigation, he didn't know at that point whether the defendant would consent to the field sobriety test or not. Those would typically be done without handcuffs being placed on him. So there was an ongoing concern about, is there a weapon here? And why did he have that concern? He had that concern because of this defendant's level of impairment, because this defendant was nonresponsive to a specific question about whether he had a weapon. It was because of the defendant's furtive movements. It was because the defendant failed to respond to direction to stop with the furtive movements. And finally, because of the discovery of the spoon with residue on it. So why did Trooper Walker write this supplemental report? Well, he wrote this supplemental report because Detective Taylor, a task force officer who was also with the Washington State Patrol, but was assigned to a task force with DEA, was also there that morning. And he understood that the defendant had been arrested for DUI. Now, the defense in this case is saying that the defendant wasn't arrested for DUI and that it's not referenced in the Trooper Walker's report. Well, Trooper Walker booked this defendant for DUI. He arrested him for DUI. There is a DUI report that he filled out that night with all of the observations that he made consistent with DUI, et cetera. So that is just an incorrect statement or assertion that the defense is making. So Detective Taylor, that was his initial contemporaneous impression about what was going on coming from Trooper Walker. So he asked Trooper Walker to write a supplemental report in order to clarify. And this was done in a transparent way. There was no mystery or secrecy about this. Trooper Walker produced another report. And that additional report said, as I indicated, that he had made the decision to arrest him for DUI, but he had put that on hold until they could resolve the question of a firearm. Now, keep in mind, this is an incident that occurred over a span of 14 minutes. So it's fairly compressed in time from when Trooper Walker ran the license plate of the vehicle to the point in time where he radioed and said that he had one in custody for possession of methamphetamine. And in that fairly compressed period of time, Trooper Walker is initiating a DUI investigation, includes trying to get this defendant out of the vehicle. The defendant was so impaired that he could not get out of the vehicle. He was hung up in his seat belt. In that time, Trooper Walker discovers the spoon. He also develops a concern about the firearm because of the issues that I mentioned, and ultimately also searches the vehicle and finds the methamphetamine. So all of that occurs in a fairly compressed period of time. So we're talking about a situation where it's a fluid traffic stop where evidence is leading to evidence, to further evidence, to further evidence of more serious conduct. Ultimately, when Trooper Walker testified, what he said was that he arrived at a conclusion, at the conclusion to arrest the DUI, that he prepared to arrest the defendant for DUI but delayed formalizing that until he addressed his concern about a weapon. So it's really not an inconsistency here. And I appreciate the defense pointing out the Eighth Circuit decision that just came out because I think it's instructive. Because if you look at that case, what the court ultimately says is, because Trooper Estwick's testimony at the hearing is so clearly and affirmatively contradicted by his own statement at the time of the events, in the absence of any explanation for this contradiction that is supported by the record, we conclude that it was an insufficient basis for the court to make the findings that it did. It's not talking about inconsistencies. It's talking about contradictions, that is, mutually exclusive sets of fact that were unexplained, that were unexplained despite the fact that that case had been remanded in order for the court to develop additional evidence if necessary. I'm not sure that there's a great difference between contradictions and uncertainties. Well, what I would say is that I think that there is an analytical difference between mutually exclusive sets of facts, mutually exclusive statements, and statements that, let's say, overlap. And this trooper said that he initially was concerned about DUI. There's no reason to doubt that. And what he then describes is an escalation of his concerns. And unfortunately, he doesn't describe that in the most artful way. What he does is he jumps to what he considered to be the most serious conduct that night. And that's what Detective Taylor asked him to clarify. So if I may just jump ahead for a moment and reference the spoon. The district court did find in this case that the analysis of the spoon was inconclusive and that it did not ultimately contradict Trooper Walker's version of the facts. I think it's important to note that Trooper Walker mentioned the residue on the spoon in his initial report, and he was consistent about that throughout. Trooper Walker reported field testing the spoon along with other items. So not only did Trooper Walker initially talk about the residue, it also has some breadth to it. That's not the only thing that he was concerned about and looking at. I think it's important to note, in retrospect, that this defendant clearly was affected by methamphetamine. There were syringes found in the vehicle. And the spoon in that context is clearly consistent with the use of methamphetamine. And also Trooper Walker never asserted that the residue on the spoon was the basis for his search. So there was no causal link. There was no reason for Trooper Walker to fabricate that since it wasn't connected to his own reasoning for why he conducted the search. And finally, with the dog that was coming, I believe that in the end it would have been inevitable discovery. So for those reasons, the government is asking this court to affirm the district court. Thank you. Just to clear up a few points, regarding the issue of whether we're only contesting sort of his state of mind, there are numerous facts here that we believe are contradictory in conflict. In his report, he says that he searches the defendant's body first, the vehicle second. In his testimony at ER 184, he says he searched the vehicle first and defendant second. In his initial report, he says that the offense of arrest was possession of meth. In the supplemental, he says it was DUI, although the CAD never mentions that he's under arrest for DUI. The timing of the arrest says that initially he's arrested  That's the first mention of an arrest. In his supplemental and at ER 203, he says he's under arrest the moment he observes him sitting in the car. At another part of the testimony, he says he's not arrested until after the spoon is found. In regard to the canine, he says that they call for the canine after finding meth in the car, in the initial report. In the testimony, he says that he actually searched the car in order to find needles or weapons so that the dog wouldn't be harmed. And of course, there's the existence of the meth in the spoon issue. And we believe that becomes critically important post-Gant, because although the court says that there was totality of the circumstances would have allowed for the PC or Gant search, regardless of the residue, we would argue that that simply isn't the case. In regard to the 14-minute stop, again, while that may seem like a quick bit of time, he claims that he's under arrest at the time that he runs his license, and yet they never mention the fact that he's under arrest when he calls on the CAD report to get his license. And regarding the firearm concern, the fear for weapons, again, if his version is true that he's under arrest for a DUI, he's not going back into that car. So we simply believe that that's not the case. You know, whether an individual is under arrest is both factual and legal, is it not? I suppose one could place someone under arrest illegally, but I think to the extent he's reporting as a historical fact that he arrested the defendant on a DUI basis just from speaking with him while the defendant is still in the car, I would think that that would be a fact that a trooper would want to note in a report, and it clearly wasn't the case here. Okay. Thank you. Your time's up. United States v. Herman will be submitted at this time. Thank you, counsel, for your argument.
judges: Fletcher B. , Paez, Ikuta